*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re L. DEMILLE, Minor.

UNPUBLISHED
May 2, 2024

No. 367436
Clare Circuit Court
Family Division
LC No. 21-000036-NA

Before: SWARTZLE, P.J., and SERVITTO and GARRETT, JJ.

PER CURIAM.

Respondent appeals as of right an order terminating his parental rights to his minor child, LD, under MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions), MCL 712A.19b(3)(g) (failure to provide proper care or custody), and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. FACTUAL BACKGROUND

The trial court acquired jurisdiction over LD following the authorization of a Michigan Department of Health and Human Services's (DHHS) petition for temporary custody under MCL 712A.2(b)(1) (failure to provide proper care and custody due to neglect or abandonment), and (b)(2) (unfit home environment due to neglect). LD's biological mother and legal husband were named on the first petition[1] because respondent had not, at that time, been determined to be the biological father. Once that occurred, through a DNA test and affidavit of parentage, a supplemental petition for permanent custody was filed, naming respondent as the biological father. That petition was authorized but later dismissed, and an additional supplemental petition for permanent custody was then filed and authorized by the trial court, which sought termination under MCL 712A.19b(3)(c)(*i*), MCL 712A.19b(3)(g), and MCL 712A.19b(3)(j). The petitions alleged that respondent had extensive substance abuse issues, engaged in domestic violence, had a significant criminal history, improperly supervised LD, and failed to engage in any services offered by DHHS.

---

[1] Three petitions were filed in total in this case, the latter two being supplemental petitions.

The trial court terminated respondent's parental rights, finding the statutory grounds for termination were met under MCL 712A.19b(3)(c)(*i*), MCL 712A.19b(3)(g), and MCL 712A.19b(3)(j), and that it was in LD's best interest to do so. The trial court found that respondent did not engage in drug screens, never followed through on parenting time, did not have a relationship with LD, failed to participate in substance abuse treatment, did not sign releases for information, failed to follow through with the parent/partner program, did not have employment, failed to engage in mental health services, and was an unsafe and unfit parent. The trial court also stated that respondent was in jail at the time of the termination hearing and did not have an adequate housing situation for LD.

The trial court noted that there was not much testimony regarding whether it was in LD's best interests for respondent's parental rights to be terminated. However, it did consider all of the information taken at the dispositional review hearings, which included respondent's chronic drug use and significant history of criminal behavior, CPS involvement, and lack of involvement in DHHS services. The court also considered that LD was doing very well in his foster home, where he lives with his sibling, and to whom he is now bonded. All of LD's needs have been met, there was stability, and he has grown appropriately. The trial court said it also took the lawyer-guardian ad litem's recommendation that, it was in LD's best interests for respondent's parental rights to be terminated, into account. The statutory grounds and best interest grounds for termination both being met, the court determined that reunification efforts would no longer be made and instructed DHHS to consider relative placement for LD if there is an appropriate relative who could care for both LD and his brother. The trial court entered an order terminating respondent's rights consistent with the above findings.

Respondent now appeals, and argues that the trial court failed to make reasonable efforts to reunify him with LD under MCL 712A.19a(2) because it failed to accommodate his learning disability and failed to provide him with enough flexibility for him to complete his service plan. He also argues that the trial court clearly erred when it determined that termination of his parental rights was in the best interests of LD under MCL 712A.19b(5). We disagree.

## II. REASONABLE EFFORTS

In general, an issue is preserved for appeal if it was raised in or decided by the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). A claim of violation of the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.*, or a request for accommodations "must be raised in a timely manner" either when the service plan is ordered or soon thereafter. *In re Terry*, 240 Mich App 14, 26; 610 NW2d 563 (2000). "The time for asserting the need for accommodation in services is when the court adopts a service plan, not at the time of a dispositional hearing to terminate parental rights." *Id*. at 27. Respondent did not raise this issue at any point during the trial court proceedings prior to this appeal. Therefore, the issue is unpreserved.

Unpreserved claims in termination cases are reviewed for plain error affecting substantial rights. *In re MJC*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 365616); slip op at 2. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted.) Typically, an error affects substantial rights if

it causes prejudice by affecting the outcome of the proceedings. *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). The party asserting plain error bears the burden of showing prejudice. *In re MJC*, ___ Mich App at ___; slip op at 2.

Under MCL 712A.19a(2), absent aggravating circumstances, reasonable efforts must be made to reunify a child with his family before DHHS seeks termination of parental rights. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). In addition, DHHS has an obligation under the ADA to modify "policies, practices, or procedures" if those modifications would prevent discrimination based on a disability, unless those modifications would fundamentally alter the services provided. *Id*. at 263 (quotation marks and citation omitted). This duty only applies to a parent who has a "known or suspected intellectual, cognitive, or developmental impairment." *Id*. (quotation marks and citation omitted.) To make a claim that DHHS did not make reasonable efforts to modify services in accordance with the ADA, a respondent must establish that he or she would have fared better if other services had been offered. *Id*. at 264. However, a court cannot accommodate a disability it does not know about. *In re Hicks/Brown*, 500 Mich 79, 87; 893 NW2d 637 (2017).

From the testimony at the termination hearing, it appears that DHHS offered a wide variety of services to respondent throughout the trial court proceedings. It offered him drug screenings, parenting education, supervised visitations, substance abuse treatment, parent/partner program, a psychological evaluation, housing, employment, and mental health services, and asked him to sign releases of information. He chose not to engage in those services, largely ignored his service plan, and failed to show he had any interest in communicating with DHHS caseworkers. Respondent did not proclaim that he had any sort of disability until the late stages of his termination of parental rights hearing, and even then, did not provide any official diagnosis or evidence supporting his claim of having a learning disability. At no point did respondent alert DHHS to any specific needs he had regarding a disability, nor did he indicate what services would be required to accommodate any specific needs. He did not make any argument as to why the services offered to him were unreasonable and did not establish that he would have fared better had different services been offered to him. DHHS caseworkers made numerous attempts to contact respondent and help him get on track with his services, but he refused, and was uncooperative on the few occasions he did meet with caseworkers. This Court thus concludes that petitioner made reasonable efforts to reunify LD with respondent and that respondent's rights were not violated under MCL 712A.19a(2) or the ADA. Respondent has not shown the trial court committed plain error affecting his substantial rights.

## III. BEST INTERESTS

"Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). This Court reviews a trial court's best-interests determination for clear error. *In re Sanborn*, 337 Mich App at 276. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). Trial courts should consider a number of factors when making a best interests determination, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014) (quotation marks and citation omitted). Additionally, a trial court may consider "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, [and] the children's well-being while in care . . . ." *Id*. at 714. "A child's placement with relatives is a factor that the trial court is required to consider." *In re Gonzales/Martinez*, 310 Mich App at 434. While placement with a relative weighs against termination, it is not dispositive because a trial court "may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012).

Respondent argues the trial court erred when it determined terminating his parental rights was in the best interests of LD because the evidence was not sufficient to support its finding, there was no attempt to locate any relatives LD could live with, and LD was originally placed in an abusive foster home. He also contends that his due-process rights were violated because termination of his parental rights was not the least restrictive means of providing for LD's safety. We disagree.

First, MCL 712A.19b(5) is constitutional and does not violate the Due Process Clause. *In re Trejo*, 462 Mich 341, 354; 612 NW2d 407 (2000). Next, based on the factors in *In re White*, the evidence overwhelmingly supports the trial court's conclusion that it was in LD's best interests to terminate respondent's parental rights.

Sadly, LD has no bond with respondent. There has been no contact between LD and respondent since LD was removed from respondent and biological mother's care in August 2021. Respondent failed to exercise any parenting time because he was unwilling or unable to pass the five consecutive drug screenings the court required of him to see LD. Respondent showed that he does not possess any parenting ability because of his extensive drug use, extensive criminal history, and lack of desire or ability to take the necessary measures to see LD. Respondent does not offer LD any sort of permanency, stability, or finality given his incarceration, periodic homelessness, and drug use. LD is currently in a foster home where he is thriving and having all of his needs met. Respondent has a significant history of domestic violence, hardly engaged with his service plan, and never visited LD. While it is true that LD was initially placed in a bad environment at his first foster home, he was quickly transferred to another home where he has remained without any problems. In short, respondent had not shown even a little bit of effort to overcome the issues that led to the trial court taking jurisdiction over LD in the first place and LD has the stability, permanency, and safety in his foster home that he did not have while with respondent and that respondent has yet to demonstrate he can or is willing to provide.

With respect to relative placement, respondent made no mention of any relatives throughout the entirety of the trial court proceedings who could care for LD and which placement would purportedly increase the likelihood that respondent would complete his service plan. The

only relative respondent mentions is LD's biological mother, who also had her parental rights terminated.  LD's biological mother is not at issue in this appeal and has no bearing on respondent's ability to complete his service plan.  The trial court gave respondent the opportunity to participate in a service plan and show he could care for LD, yet respondent did not even minimally engage in the service plan.  Nothing in the trial court record gives rise to clear error.

Affirmed.

/s/ Brock A. Swartzle
/s/ Deborah A. Servitto
/s/ Kristina Robinson Garrett